**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER C.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 6667** |
| **v.** | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**[2]

Before the Court is Plaintiff Christopher C.'s motion and brief in support of reversing and

remanding the Commissioner's decision denying his application for Supplemental Security

Income ("SSI") (D.E. 27, "Motion"), which is now fully briefed. *See* Defendant's Memorandum

in Opposition (D.E. 28, "Opp.").[3]

**I.      Procedural History**

Plaintiff applied for SSI on June 16, 2020, alleging a disability onset date of October 25,

2015. (R. 15.) The Administrative Law Judge ("ALJ") first denied Plaintiff's application in a

written decision on December 8, 2022, and the Appeals Council vacated and remanded the

decision with instructions to adequately address whether Plaintiff engaged in substantial gainful

activity during the entire period at issue, from the filing date of June 16, 2020, through the date of

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On June 30, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 7.)

[3] Plaintiff chose not to file a reply brief in this matter. (D.E. 25: "Plaintiff's reply brief, if any, is to be filed by no later than 5 p.m. on 6/10/26.")

the decision, and to continue the sequential evaluation as necessary. (R. 131-32.) On remand, the ALJ held a new hearing on April 15, 2024 (R. 1337-65),[4] and issued a written decision denying Plaintiff's application on April 29, 2024, finding that under the Social Security Act (the "Act"), Plaintiff has not been under a disability since his application date.[5] (R. 12-37.)

## II.    The ALJ Decision

The ALJ applied the Social Security regulations' five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ determined that Plaintiff engaged in substantial gainful activity ("SGA") from September 21, 2021, through December 31, 2023, but that there had been a continuous 12-month period since the date of his application during which Plaintiff did not engage in SGA. (R. 17-19.) Out of an abundance of caution, the ALJ continued the five-step sequential analysis as to the entire period at issue (since the June 16, 2020, filing date) rather than only for the period in which Plaintiff did not engage in SGA. (R. 19-20.) At Step Two, the ALJ found Plaintiff had the following severe impairments: status post fracture of the right arm and elbow; open angle glaucoma; hypertension; diabetes mellitus; degenerative joint disease of the right knee; and morbid obesity. (R. 20.) At Step Three, the ALJ determined that Plaintiff's impairments alone or in combination did not meet or medically equal a Listing. (R. 20-22.) The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work except:

> the claimant should never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; with frequent, but not constant, operation of foot controls; should avoid concentrated exposure to frequent

---

[4] On February 24, 2026, Defendant filed a new transcript of the April 15, 2024, hearing before the ALJ (D.E. 23), concurrently with a motion to reset the briefing schedule, to "allow plaintiff [time] to analyze the supplemental transcript and prepare an appropriate brief." (D.E. 24.) Plaintiff had no objection to this motion (*id.*), and the Court granted the motion and set a new briefing schedule. (D.E. 25, 26.) Plaintiff made no objection to the newly-filed transcript in his newly filed Motion. (D.E. 27.) Therefore, the Court relies on the newly-filed transcript as the official transcript of the hearing. (*See* D.E. 23, Ex. 1: R. 1337-65.)

[5] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Lincoln v. Bisignano*, 173 F.4th 886, 891 (7th Cir. 2026).

2

vibrations; should avoid concentrated exposure to extreme cold and wetness; has difficulty discriminating small objects at a distance; can perform frequent right handling; occasional right overhead reaching; and is right hand dominant.

(R. 22.) At Step Four, the ALJ determined that Plaintiff is unable to perform any past relevant work, and at Step Five, that jobs exist in significant numbers in the national economy that Plaintiff can perform. (R. 29-30.) Thus, the ALJ determined Plaintiff was not disabled under the Act since June 16, 2020, the date the application was filed. (R. 31.)

### III.    Legal Standard

The Court "will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yokosh v. Bisignano*, 170 F.4th 631, 637 (7th Cir. 2026) (internal citations and quotations omitted). "In making these determinations, an ALJ is subject to only the most minimal of articulation requirements... Our role is extremely limited, and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (internal quotations omitted). An "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Lincoln v. Bisignano*, 173 F.4th 886, 892 (7th Cir. 2026) (internal citations and quotations omitted). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement as ALJs: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

IV.     Analysis

On appeal, Plaintiff makes three arguments for remand: (1) the ALJ's analysis of the opinion of consultative examiner Liana G. Palacci, D.O., was inadequate; (2) the RFC was vague; and (3) the ALJ's Step Five determination was erroneous because the limitations in the hypothetical questions the ALJ presented to the vocational expert ("VE") at the April 15, 2024, hearing did not match the limitations ultimately assigned in the RFC. (Motion, Ex. 2: Plaintiff's Brief in Supp. of Remand ("Pl. Br.") at 10.) Plaintiff's third argument can be dismissed at the outset as it is entirely based on the first transcription of the ALJ hearing in the record (*id.* at 17-18, citing R. 65-66) and completely ignores the new transcription of the hearing testimony that was filed in February 2026 (R. 1337-65). Plaintiff never objected to the new transcription, and the Court's review of the hearing transcript and the evidence upon which the ALJ's hypothetical and RFC was derived, *see infra* at 7-8, confirms that the new transcript corrected the transcription or scrivener's errors in the first transcript that Plaintiff relies upon for his third argument.

A.     **The ALJ's Assessment of Dr. Palacci's Opinion Was Supported By Substantial Evidence.**

At the internal medicine exam of Plaintiff on December 22, 2020, Dr. Palacci observed that Plaintiff was morbidly obese; had normal range of motion in his upper and lower extremities and spine; had no warmth, tenderness, swelling or deformities of any joints; showed full strength; walked without an assistive device; had a normal gait; and could tandem walk, walk on heels and toes, and squat. (R. 531-32.) Based on the exam and Plaintiff's self-reported history, Dr. Palacci concluded that Plaintiff could sit and stand; walk greater than 50 feet without an assistive device; handle objects, lift, and carry; and hear and speak without any limitations. (R. 533.) The ALJ stated that he "considered [Dr. Palacci's] examination findings and report in combination with the totality of the evidence including the longitudinal treatment history when assessing" Plaintiff's RFC, and

4

determined that Plaintiff was more limited than Dr. Palacci's RFC suggested because Dr. Palacci's opinion was based on only one encounter. (R. 25.)

On appeal, Plaintiff contends that this Court should remand because the ALJ dismissed Dr. Palacci's opinion without addressing the consistency of Dr. Palacci's opinion with other evidence in the record and without citing the supportability of the objective findings in Dr. Palacci's report, in violation of 20 C.F.R. § 416.920c(b)(2). (Pl. Br. at 12.) But Plaintiff's argument ignores the bulk of the ALJ's opinion. This Court "review[s] the ALJ's discussion of the evidence holistically." *Lincoln*, 173 F.4th at 893. The ALJ reviewed Dr. Palacci's essentially normal exam findings in detail, which supported Dr. Palacci's conclusion that Plaintiff had no work limitations. (R. 25.) The ALJ then explained that he gave only limited weight to Dr. Palacci's opinion because of its inconsistency with the remaining medical evidence in the record, stating that "the totality of the evidence[,] including the inconsistent and limited complaints during the germane period, the consultative examination findings, the often normal physical exams often indicating normal strength, and the reported activities," warranted a more restrictive RFC. (R. 26.) The ALJ supported this conclusion with substantial evidence, including a detailed review of the evidence from 2021 through the present, up to and including Plaintiff's hearing testimony. (R. 25-28.) Moreover, any possible error in the ALJ's assessment of Dr. Palacci's opinion would be harmless because the ALJ found Plaintiff was *more* limited than Dr. Palacci opined. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. An error is harmless if, upon examination of the record, the court can predict with great confidence what the result of remand will be") (internal citations and quotations omitted).

**B.      The RFC Limitation To "Difficulty Discriminating Small Objects at a Distance" Was Supported By Substantial Evidence.**

Plaintiff also contends that the ALJ's limitation in the RFC to "has difficulty discriminating small objects at a distance" was "vague" because it was not written in work-related functional terms, and was thus unclear as to what size object or distance Plaintiff was limited. (Pl. Br. at 14-15.) With regard to Plaintiff's severe impairment of open angle glaucoma, the ALJ reviewed the medical notes in the record from an eye specialist, dated September 2019 and September 2020. (R. 26.) The ALJ noted that at these appointments, Plaintiff complained of blurred vision after losing his prescription glasses, but "he admitted that the prescription was sufficient when he had them." (*Id.*, citing R. 514, 519-22.) The eye exams showed that "with his glasses, the claimant had 20/20 near and distance visual acuity." (*Id.*) The ALJ also noted that during Dr. Palacci's exam, Plaintiff "denied any history of retinopathy and the exam noted 20/50 vision bilaterally *without glasses*, with intact visual fields." (R. 26, citing R. 531 (emphasis added).)[6] Next, the ALJ combed through the rest of the medical record, and found that Plaintiff repeatedly denied vision problems at medical exams and even denied blurred vision after a motor vehicle crash on November 5, 2021. (R. 26.) Therefore, the ALJ concluded that "[g]iven the eye exam findings and the claimant's allegations regarding his vision with the use of glasses, ... this condition is adequately considered in noting the difficulty discriminating small objects at a distance." (*Id.*)

The ALJ derived this visual limitation from the non-examining state agency medical consultants' opinions on Plaintiff's RFC. The consultants, at the initial and reconsideration levels,

---

[6] With 20/50 vision, on an eye chart, a person can read at 20 feet what a normal-sighted person can read from 50 feet. In most states, you need 20/40 vision or better for an unrestricted driver's license. People are considered "legally blind" if their vision with glasses or contacts is 20/200 or worse. https://www.aao.org/eye-health/tips-prevention/what-does-20-20-vision-mean.

opined that Plaintiff "may have difficulty discriminating details of small objects at a distance," and the ALJ found their opinions:

> reasonably, though not entirely, persuasive as the opined limitations are consistent with the evidence received into the record after this determination that did not provide any new or material information that supports greater limitations including the limitations to light work, along with the visual limitations and the occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, which are supported by the longitudinal treatment history.

(R. 29, citing R. 105, 114.) The ALJ ultimately determined that "when considering the combination of impairments and giving some limited deference to the testimony to the extent consistent with the objective evidence," Plaintiff needed additional limitations in his RFC, but these were unrelated to any vision problems. (*Id.*; *see also* R. 22 (the assigned RFC).)

At the hearing, Plaintiff's attorney did not attempt to elicit any testimony from Plaintiff regarding his vision, and Plaintiff did not offer any. The ALJ's hypothetical to the VE at the hearing matched the language in the RFC that the ALJ assigned Plaintiff, describing Plaintiff's visual limitation as "would have difficulty discriminating small objects at a distance." (R. 1358-59.) The VE asked the ALJ to repeat the question as to the visual limitation ("Can you repeat small objects at a distance, Your Honor?"), and the ALJ repeated, "have difficulty discriminating small objects at a distance." (R. 1359.) The VE testified that with this and the other limitations in the ALJ's hypothetical, three jobs could be performed: Cashier II, Counter Attendant, Merchandise Marker. (R. 1359-60.) Plaintiff's attorney had multiple follow-up questions for the VE with regard to Plaintiff's right arm limitations, but Plaintiff's attorney had no questions related to visual limitations. (R. 1360-62.)

Plaintiff's argument that remand is necessary because the vision limitation in the RFC is too vague or not written in work-related functional terms fails. First, as Defendant points out (Opp. at 6), "[w]hen a claimant fails to object to a vocational expert's qualifications or testimony during

the hearing, the claimant forfeits those arguments, and the ALJ is entitled to accept the vocational expert's conclusions." *Cain*, 148 F.4th at 499-500 (internal citations and quotations omitted). As Plaintiff's attorney declined to ask any questions at the hearing about the visual limitation in the ALJ's hypothetical or about the VE's testimony that a significant number of jobs could be performed with this limitation, Plaintiff waived this objection. Second, even if the argument was not waived, it would not be grounds for remand because Plaintiff "identifies no specific limitations that the ALJ should have included in the RFC. Nor does []he identify any specific evidence the ALJ overlooked." *Padua v. Bisignano*, 145 F.4th 784, 792 (7th Cir. 2025). In fact, as the ALJ's thorough review of the evidence showed, there was no evidence in the record that Plaintiff's visual impairment limited him in any way when he wore his glasses as prescribed. Therefore, the ALJ did not err, and any error would have been harmless anyway. *See Wilder*, 22 F.4th at 654.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion to reverse and remand the ALJ's decision (D.E. 27) and grants Defendant's memorandum in support of affirming the decision (D.E. 28).

**SO ORDERED.**

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 15, 2026**